THE TOWNSHIP OF DENVILLE, APPELLANT, v. ST. FRANCIS SANITARIUM, RESPONDENTS.

Submitted March 21, 1916—Decided June 19, 1916.

1. By the provisions of the amendment of the general act concerning taxes (*Pamph. L.* 1913, *p.* 570), all buildings used for charitable, benevolent or religious purposes, not conducted for profit, and the land whereon they are situated necessary for the fair enjoyment thereof, not exceeding five acres, are exempt from taxation although owned by a corporation of a sister state.
2. According to the terms of the same amendment, a charitable, benevolent or religious work is not conducted for profit where it is partly supported by fees and charges received from beneficiaries, provided the building is wholly controlled and the entire income therefrom is used for said charitable, benevolent and religious purposes.

---

On appeal from the Supreme Court.

For the appellant, *John F. Stickle* and *Elmer King.*

For the respondents, *Thomas J. Hillery* and *Edward K. Mills.*

The opinion of the court was delivered by

BERGEN, J.   The Sisters of the Sorrowful Mother, a corporation of the State of Wisconsin, is the owner of two hundred and three acres of land, in the township of Denville, in the county of Morris, in this state, on which have been erected a parsonage, convent, several other buildings used for sanitarium purposes, a church in process of construction and necessary farm buildings.   A small part of the land was set apart for burial purposes.   The assessor of taxes for the township of Denville assessed the entire property, refusing any exemption, which action is the basis of this litigation.   The assessment is against "St. Francis Sanitarium," a name by which the institution is locally known, instead of against the Sisters of the Sorrowful Mother, the corporate name of the owner, but this is not of any consequence, for such an error will not defeat the tax under section 30 of "An act for the assessment and collection of taxes" (*Comp. Stat., p.* 5109), and no objection is raised to the assessment for that reason. The owner appealed from the action of the township assessor to the Morris county board of taxation which reduced the assessment, and thereupon the township appealed to the board of equalization of taxes of New Jersey, and that board exempted from taxation the church, parsonage, cemetery and the buildings used as sanitariums, with five acres of land necessary for the fair enjoyment of the exempted buildings, and determined that the residue of the land and buildings, as well as certain personal property, were subject to taxation, and after ascertaining and fixing the ratable value thereof made an order in accordance with such determination and valuation.

A writ of *certiorari* was allowed the township to review this order, and the Supreme Court, agreeing with the state board in its findings of fact, affirmed the order, and from that judgment the prosecutor of the writ has appealed to this court.   The taxable valuations fixed by the board and affirmed by the judgment of the Supreme Court are not assailed on this appeal, which is rested upon the single ground that none

of the property should be exempted, for reasons now to be considered in the order submitted on prosecutor's brief.

The first is, that the profits derived from the use of the exempted buildings and land are not applied to charitable uses. This proposition takes no notice of the words "benevolent or religious." Subdivision 4 of paragraph 3 of the Tax act, *Pamph. L.* 1913, *p.* 570. By this amendment buildings, and a limited quantity of land, are exempted where they are used for charitable, benevolent or religious work, even when supported partly by fees and charges received from the beneficiaries, provided the entire income therefrom is used "for said charitable, benevolent or religious purposes," thereby extending the exempted class.

The state board of equalization of taxes, as well as the Supreme Court, found as a fact that the entire income of the institution is being used to carry on its work either in this state or other states where it maintains branches, and that the work is charitable under the common law, and there being evidence to support this finding, it will not be reviewed by this court on appeal. *Sisters of Charity* v. *Cory,* 73 *N. J. L.* 699.

The apprehended unfortunate results flowing from construing the law as written, to which a portion of prosecutor's brief is devoted, should, if well founded, be addressed to the law-making branch of the government which alone has the power to grant or regulate exemptions from taxation.

It is next urged that the judgment should be reversed because the property is owned by a foreign corporation, the contention being that the property "must be owned by a corporation of this state." That this claim is not sound will appear by an examination of our legislation relating to exemptions from taxation. The act of 1894 (*Rev. Stat., p.* 3320) exempted the buildings of certain institutions of learning and buildings used for religious worship, asylums and other designated purposes, provided they were incorporated under the laws of this state, and also the land on which they were situated, necessary to their fair use and enjoyment, not

exceeding five acres, as well as all buildings exclusively used for charitable purposes and sufficient land for the fair enjoyment thereof.

In construing this statute, the Supreme Court held many years ago that buildings, and an appropriate quantity of land, not exceeding five acres, used exclusively for charitable purposes, was exempt, although owned by a corporation of a sister state. *Litz* v. *Johnston,* 65 *N. J. L.* 169; *Congregation of St. Vincent de Paul* v. *Brakeley,* 67 *Id.* 176; *Bancroft* v. *Magill,* 69 *Id.* 589. It is here urged that these cases are not applicable because the legislature in 1903 (*Comp. Stat., p.* 5079) revised the act relating to exemptions, and amended the Revision in 1913. *Pamph. L., p.* 570. This additional legislation, however, continued in the exempted class "all buildings used exclusively for purposes considered charitable under the common law," without limitation as to ownership, and if the property is used exclusively for charitable purposes, the cases cited are applicable to the amended statute. That the respondent's property, exempted by the judgment of the Supreme Court, is used exclusively for purposes considered charitable under the common law, was found as a fact by that court, and the finding is supported by the evidence. But if there could be any doubt about the correctness of the rule laid down in the cases cited, which we do not intend to intimate, the statute of 1913, which governs this case, has removed it. By that statute the institutions entitled to exemption are divided into classes, which was not the case in the statute of 1894. The first class includes buildings used by colleges and other institutions of learning, or for the moral and mental improvement of men or women, "or for religious, charitable, benevolent or hospital purposes, or for one or more of such purposes not conducted for profit."

The second class is buildings used "for public libraries, religious worship, or for asylums or schools for feeble-minded or idiotic persons and children, and owned by corporations of this state authorized to carry on such charities," to which the limitation "not conducted for profit" does not apply.

The next exemption is the land whereon the buildings are situated necessary for their fair use, "not exceeding five acres for each." The act distinguishes buildings and land of institutions not conducted for profit from those which are the ownership by a corporation of this state being required as to property in the second class, but not to that in the first. That the buildings and land exempted in this case are used for charitable, benevolent and hospital purposes abundantly appears, and as the act extends the exemption to cases where the charitable and benevolent work carried on is supported partly by fees and charges paid by the beneficiaries where the entire income is used for such purposes, the fact appearing in this case that there is an income from the beneficiaries which is used for charitable and benevolent purposes, does not make this institution one conducted for profit, and thus beyond the benefit of the exemption.

The testimony concerning the use of the income shows that the entire net income is used in part payment of the cost of the property and buildings, and for the erection of a church on the land, which are used for charitable, benevolent and religious purposes, and are therefore within the scope of the act. We are dealing with the facts as they appear in this record, and are not to be understood as deciding that the application of the entire income to any purpose which the institution might claim to be benevolences or charities would, in all cases, give the institution the right to the exemptions allowed by the statute. Whether the application of the entire income is within the scope of the act must depend upon the conditions existing in each case.

The judgment of the Supreme Court will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 13.

*For reversal*—None.